UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON DECARLO, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION, a Washington corporation, and Does 1 through 100, inclusive<br><br>    Defendants. | Civil No. 14cv0202 JAH (BLM)<br><br>**ORDER GRANTING DEFENDANT COSTCO WHOLESALE CORPORATION'S MOTION TO DISMISS AND GRANTING DEFENDANT MBNR, INC.'S MOTION TO DISMISS**<br>[Doc. Nos. 17, 21] |

    Pending before the Court are Defendant Costco Wholesale Corporation's motion to dismiss (Doc. No. 17) and Defendant MBNR, Inc.'s motion to dismiss (Doc. No. 21). Plaintiff opposes the motions. After a thorough review of the parties' submissions and for the reasons discussed below, the Court GRANTS both motions.

## BACKGROUND

    Plaintiff, Jason Decarlo, originally filed an action on November 5, 2013, in the Superior Court of California, County of San Diego against Costco Wholesale Corporation and Does 1 through 100 inclusive. Defendant Costco Wholesale removed the action to federal court and moved to dismiss the action for lack of subject matter jurisdiction. The Court granted the motion, dismissed the action without prejudice, and provided Plaintiff an opportunity to file an amended complaint that addressed the noted deficiencies.

    Plaintiff filed a First Amended Complaint ("FAC") on October 24, 2014, against

Costco Wholesale, MBNR, Inc. and Nancy K. Rhodes. Plaintiff alleges Defendants (1) engaged in or aided and abetted in the commission of violations of California Business and Professions Code section 655 and 2556, and California Code of Regulations, Title 16, section 1514; (2) engaged in, or aided and abetted in the commission of, "unlawful" business practices in violation of California Business & Professions Code section 17200; (3) engaged in, or aided and abetted in the commission of, "fraudulent" business practices in violation of California Business & Professions Code section 17200; (4) engaged in, or aided in the commission of, "unfair" business practices in violation of California Business & Professions Code section 17200; (5) issued, or aided and abetted in the issuance of, false and misleading advertisements throughout the State of California which violate California Business & Professions Code section 17500; and (6) engaged in, or aided and abetted in the commission of violations of Civil Code 1750, *et seq*. FAC ¶¶ 1.1 - 1.6

Defendant Costco Wholesale filed the pending motion to dismiss on November 17, 2014, and Defendant MBNR filed its pending motion to dismiss on December 9, 2014. Plaintiff filed separate opposition to the motions and Defendants filed separate replies. The motions were set for hearing but were taken under submission without oral argument pursuant to Local Rule 7.1.

## LEGAL STANDARDS

**I. 12(b)(1)**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek to dismiss a complaint for lack of jurisdiction over the subject matter. The federal court is one of limited jurisdiction. See Gould v. Mutual Life Ins. Co. v. New York, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. See Steel Co. v. Citizens for a Better Environ., 523 U.S. 83, 95 (1998). When considering a Rule12(b)(1) motion to dismiss, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. See Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). In such circumstances, "[n]o presumptive

truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. (quoting Thornhill Publishing Co. v. General Telephone & Electronic Corp., 594 F.2d 730, 733 (9th Cir. 1979)). Plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

## II.  12(b)(6)

Rule 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the

truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Defendant Costco Wholesale seeks to dismiss the FAC for failure to establish Article III standing and failure to allege statutory standing. Defendant further argues Plaintiff fails to state a claim for misrepresentation.

Defendant MBNR moves to dismiss the FAC for failure to establish Article III standing and failure to allege sufficient facts to establish standing under California's Unfair Competition Law.

**I. Standing**

**A. Standard of Law**

A federal court's judicial power is limited to "cases" or "controversies." U.S. Const., Art. III § 2. A necessary element of Article III's "case" or "controversy" requirement is that a litigant must have "'standing' to challenge the action sought to be adjudicated in the lawsuit." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1152 (9th Cir. 2000). The "irreducible constitutional minimum" of Article III standing has three

elements. LSO, 205 F.3d at 1152 (internal quotations omitted). First, the plaintiff must have suffered "an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). Second, the plaintiff must show a causal connection between the injury and the conduct complained of; *i.e.,* "the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Id. (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976)) (alterations in original). Third, it must be "likely," and not merely "speculative," that the plaintiff's injury will be redressed by a favorable decision. Id. at 561.

Additionally, both the UCL and the CLRA require a plaintiff allege she suffered economic injury to have standing to pursue a claim. See Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 321 (2011).

**B. Analysis**

Defendant Costco argues Plaintiff's vague allegations that he "likely" overpaid by between $14.85 and $21.45 for his eyewear at Costco does not provide a factual basis to plausibly show that he actually paid more than he would have elsewhere. Defendant maintains there are no allegations about what Plaintiff purchased, or that the particular eyewear he purchased was in fact $14.85 to $21.45 more than he would have paid for the same eyewear from other retailers in the same market. Likewise, Defendant MBNR argues Plaintiff does not identify what eyewear he purchased, or that he in fact paid more for it than he would have paid had he purchased the same eyewear elsewhere. Defendants further argue Plaintiff fails to allege any facts that would plausibly establish a link between the purported price premium for eyewear and Costco's alleged arrangement with MBNR, which allows optometrists to lease space in Costco stores. Defendant Costco maintains the arrangement has no bearing on prices it charges for eyewear. Defendant Costco further maintains Plaintiff alleges the optometrists are trained to encourage customers to

fill their prescriptions at Costco but there are no facts suggesting Plaintiff was required to fill his prescription at Costco or was not free to take his prescription elsewhere, that he could not receive an examination from a Costco optometrist without purchasing eyewear from Costco, or that the optometrist failed to release the prescription for corrective lenses to the patient in violation of the Federal Trade Commission's Opthalmic Practice Rules. Defendant MBNR similarly argues Plaintiff does not allege that, as a result of MBNR's contract with Costco, he was required to fill his prescription at Costco, that he could only obtain an eye examination from an identified optometrist if he also purchased eyewear from Costco, or that he could not have filled his prescription elsewhere.

Defendant Costco also argues Plaintiff alleges he paid for but did not receive a comprehensive eye exam but fails to allege facts showing how the challenged business arrangement is causally related to this alleged injury. Defendant Costco maintains Plaintiff's "theory" is the MBNR-optometrist leases in California permit Costco to control the optometrists in its stores resulting in non-independent optometrists that provide incomplete exams because Costco pressures them to truncate their examinations to generate as many prescriptions as possible. Defendant Costco further maintains the alleged mechanism for Costco's purported control over the optometrists is a provision in the lease agreement that MBNR signs with each optometrist that allows Costco to decide whether or not a particular lease should be renewed after the expiration of a one-year term but, Defendant argues, the allegations are belied by the language of the MBNR-optometrist lease agreement. Both Defendants contend the agreement shows on its face that Plaintiff's allegations regarding such a provision are not true. Defendant Costco argues because Plaintiff fails to identify any other method by which Costco pressures or influences the optometrists to truncate their exams, Plaintiff fails to allege causation between the alleged scheme and Plaintiff's injury. Defendant MBNR argues Plaintiff's assumption that Costco "controls" optometrists is contradicted by the rental agreement, which includes numerous provisions establishing the optometrist's independence and control over their practices.

Defendants also argue Plaintiff fails to allege facts with sufficient specificity showing a plausible causal link between Costco's purported UCL, FAL, and CLRA violations and any harm to Plaintiff. Defendant Costco argues Plaintiff's conclusory allegations that "one-stop shop" locations "on average" have higher-priced eyewear and that he "likely" overpaid as a result of Costco's alleged wrongful conduct do not suffice. Defendant Costco further argues Plaintiff fails to allege a plausible causal connection between its allegedly false advertising and his receipt of a purported non-comprehensive eye exam. Defendant Costco maintains Plaintiff's theory of alleged wrongdoing relies on his allegations that Costco schemed to advertise independent doctors and comprehensive exams while simultaneously directing optometrists to cut corners on the tests performed. However, Defendant Costco argues, Plaintiff fails to plausibly allege any mechanism by which it could assert such control. Defendant Costco contends Plaintiff relies entirely on its ability to terminate the optometrists' lease agreements after one year, however, Defendant Costco argues, there is no such provision in the lease agreements and the optometrists' independence is explicitly protected.

In response, Plaintiff argues that he need only establish that it is more likely than not he paid $14.85 to $21.45 more for his glasses at Costco then he would have paid from a retailer that did not offer on-site examinations to establish standing. Plaintiff argues he adequately alleges he lost money by paying a $14.85 to $21.85 premium on his prescription eyewear as a result of Defendants' unlawful conduct. Plaintiff further argues he alleges a plausible link between Defendant Costco's practice of offering on-site exams and charging a premium for the prescription eyewear it sells when he alleges Defendant Costco knows that, for reasons of convenience as well as encouragement from the optometrist, individuals who obtain eye examinations at a Costco store are far more likely to buy their glasses at the store than to take their prescription elsewhere, and Defendant Costco exploits that tendency by placing a modest premium on glasses it sells.

Plaintiff further argues he does not need to prove Defendants' misconduct was the sole or even the decisive cause of the injury. He contends it is sufficient that he allege

Defendants' misconduct was a substantial factor in influencing his decision to purchase overpriced glasses from Costco.

Plaintiff also argues the money he paid for the exam itself constitutes "lost money" sufficient to confer standing because the exam for which he paid was not the exam he received. Plaintiff contends the optometrists do whatever is necessary to meet Costco's requirement that they generate as many prescriptions as possible so they do not lose their practice, which inevitably results in short exams that eschew aspects of the exam that screen for eye health. Plaintiff further argues it is not the contracts between MBNR and the optometrists that are relevant to his allegations but the agreement between Costco and MBNR, in which Costco has the ultimate say whether or not a particular optometrist's one-year lease is renewed. He argues he adequately alleges a basis for standing by plausibly alleging that he paid for an exam as a result of Defendant Costco's representations that he would receive a "comprehensive eye exam" from an "Independent Doctor of Optometry," when, in fact, what he received was a truncated, refractory exam performed by an optometrist beholden to Defendant Costco's corporate interests in selling prescription eyewear.

In reply, Defendants argue the FAC fails to allege facts showing Plaintiff actually paid such a premium for eyewear. They maintain Plaintiff knows what he bought and how much it cost, but merely alleges that he "likely" paid a premium, which is not enough to establish Article III or statutory standing. Defendants argue, it is insufficient at the pleading stage for Plaintiff to allege the mere possibility or likelihood of injury. He is required, they argue, to offer "alleg[ations of] a concrete and particularized injury."

Defendants further argue Plaintiff fails to sufficiently allege his injury, paying a premium from eyewear, resulted from the conduct he complains of, namely, the Costco-MBNR business arrangement. Defendants maintain Plaintiff does not allege that anything about the alleged arrangement precluded him from purchasing his eyewear elsewhere, and he does not sufficiently connect the alleged illegality of the Costco-MBNR arrangement to the higher prices. Defendants further argue Plaintiff's allegations fail to

show there is something about the Costco-MBNR arrangement that leads consumers to pay higher prices than they would have elsewhere beyond the sole fact that eyewear and eye exams are being offered.

Defendants also contend the FAC alleges that the provision in the rental agreement between the optometrists and MBNR is the mechanism by which Costco allegedly pressures optometrists to shorten their exams. Defendants argue any separate agreement between Costco and MBNR would have no bearing on Plaintiff's theory of causation as that theory depends on the optometrists' awareness, through their rental agreements with MBNR, that Costco has the alleged power not to renew their rental agreements. Without any allegations in the FAC to explain how the optometrists were otherwise aware of Costco's alleged control over them, an agreement between Costco and MBNR alone fails to establish a chain of causation.

Plaintiff alleges he "received a truncated exam" rather than the "comprehensive eye examination" he bargained for and expected. FAC ¶¶ 47, 48. He further alleges he purchased eyewear at the store at a charge of $164.98, which he believes is $14.85 to $21.45 more than he would have paid elsewhere. Id. ¶¶ 49, 51. He also alleges Defendant Costco contracted with Defendant MBNR to help it staff its optical departments with optometrists. Id. ¶ 25. "[T]he arrangement between Costco and MBNR [] worked as follows: MBNR signs leases with Costco for the office space in Costco's optical departments. MBNR, in turn, signs one-year, renewable subleases with optometrists." Id. ¶ 26. Plaintiff further alleges Defendant Costco retains the power to decide whether or not a particular optometrist's lease is renewed. Id. ¶ 28. Plaintiff also alleges this is incorporated in any lease agreement that MBNR signs with an optometrist. Id. He further alleges Costco's directive to generate as many prescriptions a day makes it impossible to conduct the comprehensive examinations. Id. ¶ 42. He also alleges Defendant Costco began posting signs and placing pages in mass mailing advising customers they can obtain comprehensive eye examinations in its stores from licensed optometrists. Id. ¶¶ 32, 33.

The Court finds Plaintiff fails to allege particularized and concrete economic injury. Plaintiff does not allege a standard price range for the same eyewear charged by other retailers/vendors in a competitive optometry marketplace, and that he paid more for the Costco-purchased eyewear than he would have paid elsewhere. Plaintiff also alleges he paid for but did not receive a "comprehensive eye exam," but offers only his subjective definition of what a "comprehensive eye exam" entails. As such, any injury alleged is no more than speculative.

In addition, Plaintiff fails to provide a causal link between his injuries and the conduct of which he complains. Plaintiff does not allege that the eye examinations and/or prescriptions are withheld unless Plaintiff purchases the eyewear from Costco. While he alleges optometrists are instructed to encourage customers to have their prescriptions filled in the Costco Optical department and Defendant Costco "exploits" the convenience of obtaining eyewear from the optical department located on the same premises of the optometrist office, there are no facts suggesting he was prevented from purchasing his eyewear from any other retail establishment or was otherwise forced to purchase his eyewear from the Costco optical department. Additionally, Plaintiff alleges the rental agreements between MBNR and the optometrist provided Costco the power to decide whether the agreement would be renewed, thereby pressuring optometrists to generate as many prescriptions as they could, and resulted in the optometrists performing the "truncated" examinations. Defendants, however, provide a copy of the lease agreement between MBNR and Defendant Rhodes which includes no language providing Defendant Costco any right to prevent renewal of the lease, contrary to Plaintiff's allegations.[1]

---

[1] Both Defendants request judicial notice of the contract pursuant to Rule 201 of the Federal Rules of Evidence. Federal Rule of Evidence 201 allows a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." In a footnote, Plaintiff argues Defendants fail to demonstrate the contract dated 2004 is a true and correct copy of the agreement between MBNR and Rhodes in effect in 2012. However, Defendants' requests for judicial notice include a declaration of the secretary of MBNR familiar with MBNR's recordkeeping, who has access to rental agreements maintained by MBNR in the normal course of business, and she attests the contract is a true copy of the 2004 contract executed by her and Rhodes which has been

Plaintiff now argues it is the agreement between MBNR and Costco that is relevant. This contention is not included in the allegations of the FAC. As noted by Defendants, there are no other allegations supporting Plaintiff's argument that the business arrangement between the parties resulted in optometrists being beholden to Costco and failing to perform comprehensive examinations as advertised by Defendant Costco. As such, Plaintiff fails to provide a causal link between his injuries and the complained of inadequate eye exams.

Accordingly, Plaintiff fails to establish subject matter jurisdiction and Defendants' motions to dismiss are GRANTED.

**II.  Remaining Grounds for Dismissal**

Because the Court finds it lacks subject matter jurisdiction over the action due to Plaintiff's failure to sufficiently allege injury, it will not address Defendant Costco's remaining grounds for dismissal.

**III.  Leave to Amend**

Plaintiff requests the Court grant him leave to amend in the event the Court grants the motions to dismiss. Although the Court already provided Plaintiff an opportunity to properly assert jurisdiction, the Court finds one final opportunity is appropriate.

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED:

1.  Defendant Costco's motion to dismiss is **GRANTED**.
2.  Defendant MBNR's motion to dismiss is **GRANTED**.

//
//
//
//
//

---

continuously renewed without alternation since 2004. Strother Decl. ¶¶ 2, 3 (Doc. Nos. 18-1, 22-1 ). Accordingly, the Court GRANTS the requests and takes judicial notice of the contract.

1    3.    If Plaintiffs wish to file an amended complaint to address the deficiencies
2          noted, they shall file a Second Amended Complaint **on or before October**
3          **30, 2015**.

Dated:    September 28, 2015

_____
JOHN A. HOUSTON
United States District Judge