1   Kevin F. Quinn (SBN 106224)
    Benjamin I. Siminou (SBN 254815)
2   Jarrett S. Charo (SBN 224001)
    THORNES BARTOLOTTA MCGUIRE LLP
3   2550 Fifth Avenue, 11th Floor
    San Diego, California 92103
4   Tel: (619) 236-9363
    Fax: (619) 236-9653

5
    Brian S. Kabateck (SBN 152054)
6   Christopher B. Noyes (SBN 270094)
    Benjamin S. Hakimfar (SBN 287457)
7   KABATECK BROWN KELLNER LLP
    644 South Figueroa Street
8   Los Angeles, California 90017
    Tel: (213) 217-5000
9   Fax: (213) 217-5010

10  Attorneys for Plaintiff JASON DECARLO,
    individually and as representative of the
11  class

12              UNITED STATES DISTRICT COURT

13          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

14

15  **Jason DeCarlo,** individually and        Case No.:   14cv0202 JAH (BLM)
    on behalf of all others similarly
16  situated,
                                                **Second Amended Class-Action
17              Plaintiff,                       Complaint**

18
        v.
19

20  **Costco Wholesale Corporation,** a
    Washington corporation; and
21  **MBNR, Inc.,** a New Mexico                       **Jury Trial Demanded**
    corporation.
22
                Defendants.
23

24

25

26

27

28

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

1   Plaintiff JASON DECARLO ("Plaintiff"), who brings this action on his
2  own behalf and on behalf of all others similarly situated, alleges on
3  information and belief as follows:

4   NATURE OF THE ACTION

5   1.   This is a class-action lawsuit brought by Plaintiff on his own
6  behalf and on behalf of all other persons similarly situated, against
7  Defendants COSTCO WHOLESALE CORPORATION ("Costco"), and MBNR, INC.
8  ("MBNR") for:

9       1.1.   "Unlawful" business practices in violation of Business &
10 Professions Code section 17200 consisting of violations of, or aiding and
11 abetting in the violation of, Business & Professions Code sections 655, 2556,
12 3040, and 3041, and California Code of Regulations, Title 16, sections
13 1399.251 and 1514;

14      1.2.   "Fraudulent" business practices in violation of Business
15 & Professions Code section 17200;

16      1.3.   "Unfair" business practices in violation of Business &
17 Professions Code section 17200;

18      1.4.   The   dissemination   of   false   and   misleading
19 advertisements throughout the State of California which violate Business &
20 Professions Code section 17500; and

21      1.5.   "Unfair" business practices in violation of Civil Code
22 1750, et seq.

23  2.   The purpose of this action is to seek redress from Defendants for
24 any past and present misconduct in violation of California law as described
25 herein and to deter Defendants from engaging in future misconduct in
26 violation of California law as described in the preceding paragraphs.

27  3.   As a result of the violations of California law described above,
28 Plaintiff seeks the following remedies for himself and for all others similarly

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

situated:

3.1.  Restitution to the Class of any and all monies or property the Class parted with as a result of Defendants' misconduct complained of herein;

3.2.  Disgorgement from Defendants of any and all monies obtained by Defendants from Plaintiff and the class as a result of the unlawful, unfair, and/or fraudulent business acts and practices pled herein;

3.3.  Actual damages for any violations of the Consumer Legal Remedies Act;

3.4.  Punitive damages for any violations of the Consumer Legal Remedies Act; and

3.5.  Statutory penalties, where applicable.

**PARTIES**

4.  Plaintiff is, and at all relevant times was, a resident of the County of San Diego, State of California. Plaintiff brings this action individually and on behalf of the Class of other similarly situated individuals.

5.  Defendant Costco is a Washington corporation with its corporate headquarters in Isaaquah, Washington. Costco is—and at all times relevant to this complaint, has been—registered as a "dispensing optician" in the State of California under the "Costco" and/or "Costco Wholesale" name. Neither "Costco" nor "Costco Wholesale" is licensed as an optometrist in the State of California.

6.  Defendant MBNR is a New Mexico corporation with its principal place of business in Mancos, Colorado. MBNR is registered with the California Secretary of State and maintains an agent for service of process at 818 West 7th Street, 2nd Floor, in Los Angeles, California. MBNR is not licensed as an optometrist in the State of California.

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

## JURISDICTION & VENUE

7.     Costco maintains numerous wholesale retail locations throughout the State of California and therefore conducts professional and commercial activities in the State of California on a substantial, continuous, and systemic basis sufficient to subject Costco to the general personal jurisdiction of the courts of the State of California.

8.     MBNR engages in continuous and regular commercial activity in the State of California consisting of forming and maintaining lease arrangements between itself and California optometrists interested in practicing in Costco stores.

9.     While Defendants are subject to the general personal jurisdiction of the courts of the State of California as set forth in the preceding paragraphs, the claims asserted in this complaint arise out of the Defendants' professional and commercial activities within the State of California, and therefore Defendants are also subject to the specific personal jurisdiction of the courts of the State of California for purposes of this lawsuit.

10.    The claims asserted in this Complaint arise out of acts, transactions, and conduct that occurred with the County of San Diego, and therefore this action is properly venued in the County of San Diego.

11.    Defendant Costco removed this case from the Superior Court for the County of San Diego to this Court on January 29, 2014, under the "Class Action Fairness Act," 28 U.S.C. § 1332(d), based on the assertions that there was minimum diversity, that there were more than 100 putative class members, and that the aggregate amount in controversy in the putative class exceeded $5,000,000. To the extent those assertions were true before they remain true now.

**CLASS ALLEGATIONS**

12.    Plaintiff brings this class action pursuant Rule 23 of the Federal Rules of Civil Procedure on his own behalf and as a representative of the class of similarly situated individuals.

13.    The class is defined as follows:

**All persons who, from four years preceding the filing of Plaintiff's original complaint in this action (*i.e.*, November 13, 2013) through resolution of this action, inclusive, paid for an eye examination from an optometrist at a Costco location in California.**

14.    The joinder of all class members in a single conventional action is impracticable due to the sheer number and geographical diversity of potential claimants. The disposition of these persons' claims in a class action will provide substantial benefits to both the parties and the Court. The class is ascertainable and maintains a sufficient community of interest. The rights of each member of the class were violated in a similar fashion based upon Defendants' misconduct.

15.    The class representative's claims are typical of the claims of the members of the class because Defendants' wrongful conduct arises out of Defendants' established custom and practice, and thus the class representative and members of the class were damaged by the same wrongful acts in a similar way.

16.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is unaware of any current or potential conflicts of interest with the prospective class. Plaintiff's interests are coincident with, and not antagonistic to, the interests of the other class members.

17.    Plaintiff has retained counsel that are competent and experienced in class-action litigation in general, and consumer class actions of this sort in particular, and are currently counsel in seven pending

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

1    putative or certified class actions, not including this action.

2       18.    Questions of law and fact common to the members of the class

3    predominate over questions that may affect only individual members.

4    Among the questions of law and fact common to the entire class are the

5    following:

6       18.1.    Whether Defendants have violated, or aided and abetted

7    the violation of, Business & Professions Code section 655 through the nature

8    of their operations;

9       18.2.    Whether Defendants have violated, or aided and abetted

10   the violation of, Business & Professions Code section 2556 through the

11   nature of their operations;

12       18.3.    Whether Defendants have violated, or aided and abetted

13   the violation of, Business & Professions Code sections 3040 and 3041

14   through the nature of their operations;

15       18.4.    Whether Defendants have violated, or aided and abetted

16   the violation of, California Code of Regulations, Title 16, section 1399.251

17   through the nature of their operations;

18       18.5.    Whether Defendants have violated, or aided and abetted

19   the violation of, California Code of Regulations, Title 16, section 1514

20   through the nature of their operations;

21       18.6.    Whether Defendants have engaged in, or aided and

22   abetted the commission of, "unlawful" business practices in violation of

23   Business & Professions Code § 17200 through the nature of their operations;

24       18.7.    Whether Defendants have engaged in, or aided and

25   abetted the commission of, "fraudulent" business practices in violation of

26   Business & Professions Code § 17200 through the nature of their operations;

27       18.8.    Whether Defendants have engaged in, or aided and

28   abetted the commission of, "unfair" business practices in violation of

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

- 5 -

THORSNES BARTOLOTTA McGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

1  Business & Professions Code § 17200 through the nature of their operations;

2        18.9.    Whether Defendants have violated, or aided and abetted

3  the commission of, Business & Professions Code § 17500 through the nature

4  of their operations; and

5        18.10.  Whether Defendants have violated, or aided and abetted

6  the violation of, Civil Code § 1750, et seq., through the nature of their

7  operations;

8        18.11.  Whether Plaintiff and the members of the class have

9  sustained damages as a result of any or all of the above-described

10  misconduct, and if so, the proper measure of those damages;

11        18.12.  Whether Defendants have received unjust enrichment

12  and/or ill-gotten gains through the commission of the misconduct

13  complained of herein, and if so, the amount of that unjust enrichment

14  and/or ill-gotten gains that should be disgorged and/or restored;

15        18.13.  Whether Plaintiff and the members of the class should be

16  awarded punitive damages as a result of any or all of the above-described

17  misconduct, and if so, the proper measure of those damages; and

18        18.14.  Whether Plaintiff and the members of the class are

19  entitled to any equitable relief as a result of any or all of the above-

20  described misconduct, and if so, the nature of that relief.

21      19.    A class action is superior to other methods for the fair and

22  efficient adjudication of this controversy. The class members are so

23  numerous that joinder of all members into a conventional lawsuit is

24  impracticable. A class action will permit a large number of similarly

25  situated persons to simultaneously prosecute their common claims in a

26  single forum efficiently and without the duplication of effort and expense

27  that numerous individual actions would entail. There are no difficulties

28  likely to be encountered in the management of this class action that would

1  preclude it from proceeding as a class action.

2  GENERAL FACTUAL ALLEGATIONS

3  **A.   California law regards optometry as a learned profession and**
4  **maintains a long-standing prohibition on arrangements that enable**
   **corporations to exert direct or indirect influence over optometrists.**

5      20.   The early historical development of "optometry" was rooted in
6  a conflict between business interests that regarded optometrists as mere
7  agents in the sale of eyewear to customers, and those who believed the
8  profession was designed to provide professional medical services to
9  patients.

10     21.   In the early 1900s, optometrists were commonly working for or
11 within retail establishments such as department stores, jewelry stores and
12 drug stores. These full scale optometry departments were then touted in
13 massive newspaper and radio advertising campaigns about doctors at the
14 ready to perform exams and the ease and convenience of on-site eyewear
15 purchases.

16     22.   But many optometrists were concerned that such practices
17 compromised their profession's integrity as it required optometrists to be
18 sellers of glasses first, and providers of clinical care to their patients second.

19     23.   In 1903, California took the first step toward alleviating this
20 concern by recognizing and regulating optometry as a profession by
21 enacting the Optometric Practices Act legislation, becoming just the second
22 state in the United States to statutorily regulate the profession of optometry.

23     24.   In doing so, the State of California formally regarded optometry
24 as a healing art and a learned profession. As such, optometrists who
25 practice in California must be licensed by the State Board of Optometry. To
26 do so, an individual must have a Doctor of Optometry degree from a
27 recognized school of optometry and must pass a standardized test
28 administered by the Board of Optometry. Once licensed, optometrists are

THORSNES BARTOLOTTA McGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

- 7 -

permitted to conduct eye examinations to detect refractive errors and eye diseases, and to prescribe corrective lenses.

25. The decision to recognize the practice of optometry as a learned, healthcare profession was significant because the State of California has historically maintained, and continues to maintain, a strong public policy against corporate control of learned professions such as medicine.

26. The State maintains this policy out of well-founded fears that arrangements which tied an optometrist's economic livelihood to the success of a for-profit corporation would present optometrists with a conflicts of interest between a desire for profit and the best interests of their patients. The California Supreme Court succinctly summarized this policy and the rationale behind it in *People v. Cole*, 38 Cal.4th 964 (2006):

> California law also restricts the relationships that optometrists may have with corporations. In general, under California's long-standing "policy" . . . against [the] corporate practice of the learned professions," for-profit corporations "may not engage in the practice of . . . medicine." (*People v. Pacific Health Corp.* (1938) 12 Cal.2d 156, 158-159 (*Pacific Health*).) The ban on the corporate practice of medicine generally precludes for-profit corporations—other than licensed medical corporations—from providing medical care through either salaried employees or independent contractors. (*Ibid.*; *Conrad v. Medical Bd. of California* (1996) 48 Cal.App.4th 1038, 1047-1048 [discussing exceptions].) It has been held applicable with respect to optometrists. (*California Assn. of Dispensing Opticians v. Pearle Vision Center, Inc.* (1983) 143 Cal.App.3d 419, 427 (CADO).) Courts have said that the ban on the corporate practice of medicine "is intended to ameliorate 'the evils of divided loyalty and impaired confidence' which are thought to be created when a corporation solicits medical business from the general public and turns it over to a special group of doctors, who are thus under control." (*Conrad v. Medical Bd. of California, supra*, 48 Cal.App.4th at pp. 1042-1043.)

27. No doubt perceiving these and other perils that would inevitably arise any time a corporation in the business of selling eyewear has control or influence over an optometrist, the State of California long ago implemented a number of laws in an effort to insulate optometrists from

THORSNES BARTOLOTTA McGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

1   control by non-healthcare commercial entities.

2       28.   To that end, as far back as the 1923, California prohibited the

3   employment of an optometrist by a non-licensee corporate entity.

4       29.   In 1939, the California Legislature enacted Business and

5   Professions Code section 2556 to incorporate the 1923 prohibition against

6   the employment of an optometrist by a non-licensee business.  It further

7   expanded the prohibition to include both contractual/leasing agreements as

8   well as direct employment arrangements.

9       30.   The 1939 legislation was necessary as California realized large

10  numbers of optometrists were operating in commercial retail settings which

11  resulted in optometrists being beholden to business entities. Such situations

12  were determined to be contrary to public policy as optometrists were

13  perceived as commercial sellers of eyewear as opposed to professional

14  providers of medical services.  California Business and Professions Code

15  § 2556 diminished the ethical concerns of the profit-driven pressure to sell

16  eyewear as opposed to tending to the specific medical needs of patients.

17      31.   Between 1939 and the 1960s, California's prohibitions on

18  associations between corporations and optometrists continued to evolve as

19  major eyewear retailers continued to devise innovative and creative

20  schemes to circumvent California law.

21      32.   At all times relevant to this complaint California law in this area

22  consisted of, among other provisions, the following regulations:

23          32.1.  Business & Professions Code section 655, which

24  prohibited optometrists from, among other things, having "any

25  membership, proprietary interest, coownership, landlord–tenant

26  relationship, or any profit-sharing arrangement in any form, directly or

27  indirectly," with any dispensing optician.

28

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

32.2.   Business & Professions Code section 2556, which made it unlawful for a dispensing optician to "advertise the furnishing of . . . the services of an optometrist," or to "directly or indirectly employ or maintain [an optometrist] on or near the premises used for optical dispensing."

32.3.   Business & Professions Code sections 3040 and 3041, which prohibit lay corporations from "engag[ing] in the [unlicensed] practice of optometry."

32.4.   California Code of Regulations, title 16, section 1399.251, which provides that it is unprofessional conduct for a registered dispensing optician to "advertise the furnishing of services of an optometrist."

32.5.   California Code of Regulations, title 16, section 1514, provides, among other things, that when "an optometrist rents or leases space from and practices optometry on the premises of" a commercial entity, the "practice shall be owned by the optometrist *and in every phase be under his/her exclusive control*." (Emphasis added.)

32.6.   Notably, the California Legislature, no doubt anticipating that eyewear retailers might use intermediaries to facilitate otherwise prohibited relationships with optometrists, presciently prohibited eyewear retailers from "*directly or indirectly*" engaging in any of the prohibited practices. Moreover, California law not only makes it a crime for eyewear retailers and optometrists to violate the aforementioned laws and regulations, but also extends criminal liability "to any and all persons, whether or not so licensed under this division, who participate with such licensed person in a violation of any provision of this section." *E.g.*, Cal. Bus. & Prof. Code § 655.

33.   And yet, despite the unequivocal laws banning the practice, many eyewear retailers, including Costco, could not resist the tremendous business opportunity associated with co-locating optometrists in their

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

stores. Not only would the prospect of an on-site exam draw customers to the retailer's store, but the customers would be more apt to fill the resulting prescription at the store than take it elsewhere. The result would be significantly more eyewear sales than without an on-site optometrist.

34.     But as one might expect, eyewear retailers' practice of forming prohibited associations with optometrists was not without controversy. In 1983, the California Court of Appeal ruled that franchisor–franchisee relationships between eyewear retailers and optometrists were illegal under California law. *See Cal. Ass'n of Dispending Opticians v. Pearle Vision Center, Inc.*, Cal. App. 3d 419 (1983). And in 2009, the California Supreme Court held that a model in which an eyewear retailer indirectly employs optometrists through an intermediary healthcare plan was also a violation of California law. *See People v. Cole*, 38 Cal. 45h 964 (2006).

35.     Frustrated at the court decisions expressly prohibiting seemingly every conceivable form of association between an eyewear retailer and an optometrist, yet unwilling to give up the massive profits associated with one-stop optical shopping, the eyewear retailers, led by their trade group, the "National Association of Optometrists and Opticians," filed declaratory relief actions in federal court, seeking to strike down Business and Professions Code sections 655 and 2556 among other provisions.

36.     In successive decisions, the Ninth Circuit upheld the California laws banning associations between eyewear retailers and optometrists. *See Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144 (9th Cir. 2012); *Nat'l Ass'n of Optometrists & Opticians v. Brown*, 567 F.3d 521 (9th Cir. 2009). When their desperation petition for certiorari was denied by the U.S. Supreme Court, *see Nat'l Ass'n of Optometrists & Opticians v. Harris*, 133 S. Ct. 1241 (U.S. 2013), the eyewear retailers' protracted legal efforts to maintain

- 11 -

1   their illegal business models came to a close.

2       37.   But the eyewear retailers' were not yet ready to abandon their
3   business model. Instead of the courts, the retailers turned their attention to
4   Sacramento.

5       38.   In 2015, 76 years after California Business and Professions Code
6   section 2556 was first enacted, the eyewear retailers—including Luxottica,
7   Costco, and Wal-Mart—attempted to fast-track a bill through the
8   Legislature and the Governor's office that, if adopted, would have been
9   tantamount to a repeal of Business and Professions Code sections 655 and
10  2556.  A true and correct copy of the initial draft of the bill that was being
11  sponsored by Luxottica, AB 684 is attached hereto as Exhibit "A."

12      39.   The original versions of the bill sponsored by the eyewear
13  retailers were designed to immunize them in this litigation by legalizing the
14  very conduct alleged by the putative class.

15      40.   As AB 684 worked its way through Sacramento, the revised
16  version that was being discussed in 2015 was designed to give the eyewear
17  retailers in this and the related putative class actions a moratorium on
18  enforcement of the statute. This included, but was not limited to, the
19  moratorium on *new* civil lawsuits and administrative and criminal
20  prosecution for employing optometrists and/or entering into a
21  landlord/tenant relationship with the same optometrists. These are the very
22  issues at interest in this litigation.

23      41.   The intended effort of AB 684 was to substantially change and
24  modify California Business and Professions Code sections 655 and 2556 by
25  introducing Assembly Bill 684 in the California State Assembly.  Luxottica
26  was and is trying to legislatively get a "hall pass" on its illegal conduct by
27  having the Legislature stay enforcement of sections 655 and 2556.

28

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

THORSNES BARTOLOTTA McGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

42.   But the retailers' lobbying efforts fared no better than their litigation strategy. The version of AB 684 that the eyewear retailers introduced was extensively altered and scaled back extensively during the Legislative process before being put to a final vote. In final form, rather than repeal sections 655 and 2556, AB 684 actually *underscored* the very concerns that motivated this and the other putative class actions pending before this Court by putting express and meaningful separation between optical retailers and the optometrists practicing out of retail locations.

43.   The heavily altered version of AB 684 subsequently passed both the state senate and assembly and was approved by the Governor on October 1, 2015. Attached hereto as Exhibit "B" is a true and correct copy of the version of AB 684 that was passed by the California Legislature and executed by the Governor.

**B.   Costco openly violated—and continues to violate—California law by offering in-store eye examinations at their retail locations from on-site optometrists who are subject to their indirect control and influence through their de facto agent, MBNR.**

44.   The exact details of Defendants' scheme are held in secret, are not disclosed to the public, and are therefore known only to them at this juncture. Although Plaintiff has not yet had the benefit of formal discovery in this case, Plaintiff's own informal investigation has revealed the following details of Defendants' business model:

45.   In 1996, Costco and MBNR executed an agreement under which Costco leases office spaces immediately adjacent to the optical department in Costco retail locations throughout California. The purpose of this lease agreement was to enable MBNR, as Costco's de facto agent, to sublease the space to California-licensed optometrists for the purpose of conducting eye exams out of those office locations.

Case No.: 14cv0202 JAH (BLM)                          Second Amended Complaint

46. The agreement between Costco and MBNR specifies that MBNR must charge the tenant–optometrists "rent" equal to 15% of the optometrists' gross revenues, which—for Costco optometrists—consists of fees collected for exams. In turn, MBNR pays a portion of the profits it receives from the tenants to Costco.

47. This arrangement is the perfect mechanism for Costco to assert indirect control over its tenant–optometrists. Because MBNR's own profits are dependent on a high volume of eye examinations, MBNR has a built-in incentive to ensure that the tenant–optometrists in Costco locations are performing a high volume of eye exams. And for Costco, the resulting high volume of on-site eye examinations ensures a steady stream of customers in need of prescription eyewear.

48. Thus, by giving MBNR a vested interest in the tenant–optometrists' revenues, this scheme allows Costco to get MBNR to do its "dirty work"—coercing optometrists to perform a high volume of eye exams—while Costco reaps the benefits of a high-volume exam practice generating prescriptions in its store. Thus, as a former Costco tenant–optometrist testified in a recent lawsuit against Costco and MBNR, Costco optometrists were "constantly under pressure by MBNR to do more exams because, as it was explained to me by MBNR, Costco made money when I wrote more prescriptions."

49. In accomplishment of this scheme, MBNR signs individual lease agreements with the tenant–optometrists. Costco and MBNR are too clever to state, in blackletter, that the individual optometrists are subject to the control and influence of either Costco or MBNR, and thus anyone seeking to find such a clause in the *written* lease agreements between MBNR and the individual tenant–optometrist would be deservedly disappointed.

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

50.    Rather, the aspects of Costco and MBNR's control and influence over their tenant–optometrists arise in a variety of subtle, insidious ways that might be lost on a casual observer, but which become manifest when one considers the scheme as a whole:

51.    **One-year leases are terminable at MBNR's will:**

51.1.    The leases between MBNR and the optometrists are limited to a single year. After the year expires, the lease term can be renewed for another year at MBNR's discretion.

51.2.    Under section 4.3 of the lease agreement between MBNR and the tenant–optometrist, the lease gives MBNR the right to terminate the lease at **any time** for seemingly **any reason** with just 30 days written notice to the optometrist.

51.3.    To the uninformed observer, the specter that a tenant–optometrist may suddenly lose his or her lease for office space in a Costco store may seem like an insignificant consequence. But the reality is that optometry is a highly competitive, highly saturated profession, and for many optometrists, establishing a gainful, independent practice is a daunting task. Indeed, many optometrists graduate from optometry school with significant student debt. And opening a gainful optometry practice will require the optometrist to buy or lease expensive diagnostic equipment, further compounding their debt. This, of course, is not to mention salaries for staff members. And even then, there is, of course, no guarantee that patients will come to such a practice *even if* the optometrist spends still more money on advertising.

51.4.    Corporate retailers like Costco present a tempting port in this storm by advertising fully equipped office spaces, a guaranteed stream of customers/patients, and by expressly stating a preference for recent graduates. It is thus no surprise that retail optometry positions have become

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

- 15 -

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

highly coveted positions within the optometry profession, particularly among recent optometry graduates. Indeed, in a sworn declaration, Robin Strother, a principal of MBNR, testified that, at any given time, "MBNR maintains a waiting list of more than three hundred optometrists who have expressed interest in renting an optometric office inside a Costco warehouse in California."

51.5.   The ones who obtain such a lease are understandably reluctant to lose it, and are therefore vulnerable and susceptible to trading their professional independence where necessary to ensure their good standing with Costco and MBNR. Former Costco optometrists testified that Strother and Brad McGee, another MBNR principal, would frequently remind tenant–optometrists deemed to be "insubordinate" of the long waiting list for their office as a subtle way of coercing the tenant–optometrist to toe the line.

52.   **Optometrists must work at least 48-hours-per-week, but have no after-hours access to their offices:**

52.1.   Despite purporting to give the tenant–optometrists control over all aspects of the practice, section 3.4 of the lease agreement requires the optometrist to see patients "for at least *forty-eight (48) hours per calendar week*, with a minimum of seven (7) hours on Saturday." (Emphasis added.) This requirement is routinely reinforced in regular news bulletins which remind the optometrists that "Your Rental Agreement specifies minimum hours of optometric coverage per week."

52.2.   A former Costco optometrist alleged in a lawsuit filed in federal court, that he was reprimanded for limiting his time to three days a week at his Costco practice, while undertaking other work at the University of California–Berkeley.

52.3.   Although the lease purported to give tenant–optometrists access to their offices outside store hours, former Costco optometrists would testify that they did not have access to their offices after Costco hours.

52.4.   The lack of access to their offices after hours, combined with the requirement that they work 48 hours per week, was a subtle way of ensuring that the tenant–optometrists had no choice but to be onsite while the Costco optical department was open selling glasses.

53.   **Optometrists have no control over fees they charge:**

53.1.   Although the lease agreements state on their face that the optometrists can dictate aspects of their practice, several former Costco optometrists testified that MBNR told them that they must charge $49 for an eye exam and that "Costco and MBNR would terminate the lease pursuant to the [l]ease's 30-day termination provision."

53.2.   A former Costco optometrist who filed a federal lawsuit against Costco and MBNR indicated that, when he unilaterally increased his exam fee from $49 to $59, MBNR refused to provide him with a sign advertising the new price and informed the optometrist that the lease would be terminated in 30 days if he did not change his exam fee back to $49. When the optometrist complained to Costco, the store manager told him that it would only support his continued leasehold if he dropped his price back to $49. Afraid of losing his leasehold, the optometrist reluctantly complied. Eventually, his lease was terminated expressly for, at least in part, "charging too much" for exams.

53.3.   Several former Costco optometrists further testified that they were told by MBNR that the purpose for limiting exam fees to $49 was "because low fees bring in more patients for exams."

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

53.4.    But another (if not the *predominant*) reason for limiting optometrists' exam fees to $49 was because, at that rate, a tenant–optometrist could not generate significant income without doing a high volume of exams, with a resulting trickle-down effect on Costco's eyewear sales.

54.    **Optometrists have no control over advertisements in their office space:**

54.1.    Contrary to the representation that the optometrist will have control over his or her practice, section 12.2 of the lease precludes the optometrist from placing any signs or advertisements in his or her leased office space without the express consent of MBNR.

54.2.    Thus, a former Costco optometrist testified that he was ordered to remove a poster he had hung in his office space touting the benefits of Lasik surgery. MBNR advised the optometrist not to promote Lasik procedures "because patients having LASIK often don't need glasses, and the entire purpose of having an optometrist in Costco was to help Costco sell more glasses in the Costco optical."

55.    **Optometrists have limited control over therapies they can recommend or provide:**

55.1.    In court filings, a former Costco optometrist related an email exchange with principals from MBNR in which he asked for permission to offer dilated eye exams to patients who, in his professional opinion, needed dilation. Because dilation was not included in the $49 exam, he proposing charging such patients an additional amount for a dilated exam. Brad McGee, the president of MBNR, responded in an email, chiding the optometrist for "losing sight of the bigger picture" and reminding him that "[l]ow prices drive patients to your office." Instead, he directed the optometrist to "eat" the cost of "an occasional field or dilation

- 18 -

[exam]" or "bring them back for an office visit if you really need that small fee."

55.2.    That same optometrist related his desire to fit patients with therapeutic "CRT" lenses, the purpose of which was to eventually wean patients off of their corrective lenses. The optometrist contacted Costco's lens supplier to confirm that they made the requisite lens and placed an order. This information apparently got back to Costco and MBNR, because a principal for MBNR advised the optometrist that the order had been cancelled and instructed him not to offer CRT lenses to patients because, as with Lasik, CRT lenses would cause customers to lose their dependency on corrective lenses, and would thus cut into Costco's eyewear sales.

55.3.    The optometrists are also required to use the optometric examination equipment that MBNR provides and are prohibited from swapping out any of that equipment with their own.

56.    **Optometrists are audited to ensure conformity with quotas and satisfactory performance relative to other Costco optometrists:**

56.1.    As noted above, under section 5.2, the tenant–optometrist promises to give MBNR "a percentage of the Gross Revenue, hereinafter defined, from the operation of the Clinic," which is defined under section 5.4 to include the revenues generated from exam fees and other professional services the optometrist renders in the leased office space.

56.2.    Aside from giving MBNR—a lay corporation and Costco's de facto agent—a vested financial interest in ensuring the optometrist sees as many patients as possible, this aspect of the lease also gave MBNR a built-in method to assess the performance of each individual optometrists.

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

56.3.   Indeed, under sections 6.1 and 6.3, the lease requires the tenant–optometrist to maintain "books and records" of all revenues that the tenant–optometrist conducts at the business, and gives MBNR "the right to have internal or outside auditors make a special audit of all books and records."

56.4.   As part of their reporting requirements, the optometrists are required to fill out and maintain MBNR-supplied forms entitled "MBNR DAILY CLINIC REPORT." The reports have fields for the optometrists to record (1) the hours they work per day, (2) the number of eye exams they conduct per day, and (3) the number of contact-lens exams they conduct per day, with a field to record the total number of exams per day and per four-week period.

56.5.   In addition, the optometrists are required to fill out and maintain MBNR-supplied forms entitled, "MBNR, INC. PERIOD RENT REPORT." In addition to recording the number of "contact lens exams and fittings," "eye exam[s]," and "other procedures" conducted per four-week period, the forms require the optometrist to record the total number of hours worked and the total dollar amount collected for each time of exam for that period.

56.6.   The forms are submitted to MBNR where the data is complied with data from optometrists in the region as well as state-wide, into spreadsheets and graphs, allowing MBNR and Costco to assess an optometrist's performance relative to others' and to identify under-performing optometrists.

56.7.   The review process entails an analysis of a document known as a "DETAIL SALES ANALYSIS" showing the optometrist's total revenue for eye exams, contact lens exams, and total net revenue.

1    56.8.    Optometrists who are deemed to be below the acceptable

2    threshold are notified of that deficiency, given instructions on how to

3    improve revenues through increased exam volume, and are warned that

4    continued failure to achieve the requisite standards will result in the

5    termination of their lease, and are given training on how to increase their

6    numbers. Optometrists who continue to fall short of expectations have their

7    leases terminated and are promptly replaced by an optometrist who will

8    then have his or her shot to toe Costco's corporate line.

9    57.    **High-ranking Costco employees are consulted before MBNR**

10   **renews any lease with an optometrist:**

11   57.1.    The determination whether to terminate or renew an

12   optometrist's lease is based in large part on a form entitled "OD REVIEW

13   (LEASE RENEWAL)."

14   57.2.    Tellingly, the form has a field for data regarding the

15   optometrist's average hours per week ("Ave. Hours/Week"), "Growth

16   Rate," and "Refund Rate." The form also has areas for recording the

17   comments from Costco supervisors, including the manager of the optical

18   department at that particular optometrist's store, as well as the Regional

19   Manager.

20   57.3.    This and other information confirms that Costco officials

21   have a significant role in dictating whether a particular optometrist is

22   terminated or retained, thus bolstering the already built-in incentive for

23   MBNR to ensure that the location is staffed with a highly productive

24   optometrist who sees a high volume of patients.

25   58.    In short, the aforementioned testimony and documentation

26   regarding Defendants' activities during the class period reveals that the

27   lease agreements between MBNR and Costco's tenant–optometrists are not

28   the typical arms-length, garden-variety lease agreements between a

THORSNES BARTOLOTTA McGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

- 21 -

1  landlord and a tenant.

2       59.    Rather, the intent and effect of the lease is such that MBNR—

3  and, thus, its de facto principal, Costco—plays an active role in managing

4  material aspects of the tenant–optometrists' day-to-day practices, including,

5  at a minimum, their hours of operation, the fees they charge, services they

6  advertise, therapies they offer, the length of their exams, the scope of the

7  exams, and the equipment they use to conduct the exams.

8       60.    Moreover, if the tenant–optometrist gives the slightest push

9  back or manifests any reluctance to do as told, MBNR uses its ability to

10 terminate the lease at will and its 300-optometrist-long waiting list as a

11 cudgel to coerce the tenant–optometrists back inline. Thus, as a former

12 Costco optometrist summarized in a recent court filing, the tenant–

13 optometrists do their best to act as "good soldiers" by "spit[ting] out all the

14 examinations they can, because it is the only way they can ensure MBNR,

15 acting as Costco's strong-arm, won't pull the plug on their livelihood."

16

17 **C.    Costco engages in fraudulent and unlawful conduct by baiting
       customers into its retail locations by advertising   the availability of
18     eye examinations by "Independent Doctors of Optometry."**

19      61.    In light of the cause-and-effect relationship between on-site eye

20 exams and increased eyewear sales, Costco lures customers into Costco

21 locations by advertising on the Costco website, in Costco's print media, and

22 on prominent signs and displays in the Costco store, the availability of eye

23 examinations from "Independent Doctors of Optometry."

24      62.    The consistent and repeated emphasis on "Independent Doctors

25 of Optometry" is not accidental or immaterial. To the contrary, Costco

26 knows that the average consumer—including Plaintiff and members of the

27 putative class—have a strong and justifiable preference for healthcare

28 providers whose examinations and treatment recommendations will be

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

1   determined solely by what is in the patient's best interest without outside
2   influence.

3       63.   Understandably, the average consumer would not entrust an
4   examination of their eyes to, or trust the treatment recommendations of, an
5   optometrist who is under the control and influence of a for-profit
6   corporation whose goal is to sell eyewear. Accordingly, the average
7   consumer would not pay for an examination of their eyes by an optometrist
8   whom they knew and understood to be under the control and influence of a
9   for-profit corporation whose goal is to sell eyewear.

10      64.   Costco knows that to the average consumer—including Plaintiff
11  and members of the putative class—the phrase "Independent Doctor of
12  Optometry" fosters the impression that the optometrists treating them are
13  not operating under any duress or influence that would present a conflict of
14  interest   in   performing   examinations   and/or   making   treatment
15  recommendations.

16      65.   Costco also knows that the average consumer—including
17  Plaintiff and members of the putative class—would not purchase or
18  undergo an eye examination that is not being provided in conformity with
19  California law.

20      66.    Costco obviously also knows that a consumer could not buy an
21  eye exam at its stores if did not make them available, and thus knows that it
22  can only entice customers to come to its stores for eye exams by making
23  those exams available from on-site optometrists, in violation of California
24  law.

25      67.   Thus, to avoid this impediment to their business model, Costco
26  fails to disclose or conspicuously state that the optometrists working out of
27  Costco retail locations are, in fact, subject to Defendants' control and
28  influence. Nor do they disclose that its business model is illegal and thus

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

that the exams are being offered in violation of California law. To the contrary, Defendants repeatedly, emphatically, and conspicuously represent that the optometrists in Costco stores are "Independent Doctors of Optometry."

68.   But, as discussed in the preceding paragraphs, the threshold acts of locating optometrists in its stores, forming indirect landlord–tenant relationships with them by and through its de facto agent MBNR, exerting control and influence over material aspects of the optometrists' practices, and advertising the availability of on-site exams are all violations of California law without which Defendants would not, and could not, sell eye exams to the public.

69.   Moreover, contrary to its deception by omission, the exams are not being provided in conformity with California law.

70.   Moreover, contrary to its representation that the exams are being provided by "Independent Doctors of Optometry," as discussed in considerable detail in the preceding paragraphs, Defendants' tenant–optometrists are, by nature of the Defendants' scheme, not independent and are instead subject to Defendants' control and influence in material ways.

SPECIFIC FACTUAL ALLEGATIONS

71.   On June 23, 2012, Plaintiff visited the optical department at the Costco store at 12155 Tech Center Drive in Poway, California.

72.   Having seen Defendants' advertising both online and on prior trips to the store regarding the availability of onsite eye exams from an "Independent Doctor of Optometry," Plaintiff came to the store with the intent of purchasing an eye exam from an "Independent Doctor of Optometry" and, in fact, purchased an eye exam from the tenant–optometrist, Nancy K. Rhodes ("Rhodes"), for $49.

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

73.   Based on the unqualified representation that the exam would be performed by an "Independent Doctor of Optometry," Plaintiff operated under the reasonable belief that the doctor on site was, in fact, a fully "Independent Doctor of Optometry."

74.   In fact, Rhodes—as with every other tenant–optometrist in Costco's stores throughout California—was a tenant of MBNR/Costco under the same exact lease with MBNR described earlier in this complaint and was thus operating under the same exact control and influence as the former Costco optometrists' whose experiences were related earlier in this complaint. As such, and in contradiction of the unqualified representation that Rhodes was an "Independent Doctor of Optometry," Rhodes was subject to Defendants' control and influence regarding material aspects of her day-to-day practice, including, at a minimum, her hours of operation, fees she charged, services she advertised, therapies she offered, the length of her exams, the scope of her exams, and the equipment she use to conduct the exams.

75.   Moreover, Rhodes' unfettered presence at or near the optical department was itself an implied representation by Costco that Rhodes' presence on-site was legal and that the exam was being provided in conformity with California law.

76.   Plaintiff values his eye health and therefore would not have sacrificed the integrity of his eye exam by paying for, or undergoing, an exam from an optometrist who was not, in fact, an "Independent Doctor of Optometry." For these same reasons, Plaintiff would not have paid for or undergone an eye examination that was not legal for Defendants to provide and thus not rendered in conformity with California law.

77.   Moreover, Rhodes' presence in the Costco location and status as an indirect tenant of Costco (by and through its de facto agent, MBNR)

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

- 25 -

1   were themselves violations of California law, without which Rhodes would
2   not have been able to furnish an exam for Plaintiff to buy. Had Defendants
3   not made eye exams available to Plaintiff at its Costco location, Plaintiff
4   would not—indeed, *could not*—have purchased an eye exam from the
5   tenant–optometrist at that location.

6       78.   Plaintiff thus would not have purchased an eye exam from a
7   Costco optometrist but for:

8       78.1.   Defendants' unlawful act of making the examinations
9   available onsite and advertising their availability;

10       78.2.   Defendants' nondisclosure of the fact that the
11   optometrists performing the exam were subject to Defendants' oversight
12   and control, and were thus not "Independent";

13       78.3.   Defendants' nondisclosure of the arrangement between
14   themselves, the aim and effect of which was to ensure that the optometrists
15   in Costco stores, including Rhodes, will see a high volume of patients and
16   meet the various quotas set not by the optometrists themselves in the
17   exercise of their professional judgment, but rather by Costco and MBNR.

18       78.4.   Defendants'   nondisclosure   and/or   implied
19   misrepresentation of the fact that the practice of offering onsite exams was
20   illegal;

21       79.   As a direct and proximate cause of Defendants' collective
22   unlawful, fraudulent, and unfair business activity, Plaintiff "lost money" in
23   the amount of at least $49 by paying for an exam from Costco's tenant–
24   optometrist that he *could not* have purchased but for Defendants' unlawful
25   business practices, and *would not* have purchased but for Defendants'
26   misrepresentations and/or omissions detailed above.

27

28

THORSNES BARTOLOTTA McGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

## FIRST CAUSE OF ACTION
## Violation of California's Unfair Competition Law (Bus. & Prof. Code, § 17200) for "Unlawful" Business Practices for Violations of Business & Professions Code sections 655 and 2556, and Title 15, section 1514 of the California Code of Regulations
### (Against All Defendants)

80.    Plaintiff incorporates herein each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

81.    Defendants, by and through their conduct as described above, engaged in, and/or aided and abetted, "unlawful" conduct in violation of Business and Professions Code § 17200 in the following ways:

81.1.    Defendants violated, and/or aided and abetted the violation of, Business and Professions Code § 655 by, directly or indirectly, forming a landlord–tenant relationship between Costco, a registered dispensing optician, and optometrists (including Rhodes) under which optometrists directly or indirectly lease office space within Costco locations, by and through MBNR, for the purpose of providing onsite eye exams.

81.2.    Defendants violated, and/or aided and abetted the violation of, Business and Professions Code § 655 by, directly or indirectly, forming a profit-sharing relationship between Costco, a registered dispensing optician and optometrists (including Rhodes), under which optometrists shared a significant portion of their profits with MBNR, which in turn shared a portion of those profits with Costco;

81.3.    Defendants violated, and/or aided and abetted the violation of, Business and Professions Code § 2556 by, directly or indirectly "maintaining" optometrists (including Rhodes) at Costco locations in California for purposes of providing on-site examinations to Costco customers;

81.4.    Defendants violated, and/or aided and abetted the violation of, Business and Professions Code §§ 3040 and 3041, by  directly or

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

1   indirectly, asserting control over material aspects of their tenant–

2   optometrists' practices, thus constituting the unlicensed practice of

3   optometry;

4        81.5.   Defendants violated, and/or aided and abetted the

5   violation of, title 16, section 1399.251, of the California Code of Regulations

6   by advertising on the Defendants' websites, in print and other media, and

7   on signs in Costco locations, the on-site availability eye exams by an

8   optometrist; and

9        81.6.   Defendants violated, and/or aided and abetted the

10   violation of, title 16, section 1514, of the California Code of Regulations by

11   causing its tenant–optometrists (including Rhodes) to cede material aspects

12   of their practice to Defendants' control and influence.

13       82.   As a combined and overlapping consequence of Defendants'

14   aforementioned violations of California law, Defendants fostered an illegal

15   environment at Costco locations throughout California in which:

16        82.1.   Optometrists were illegally placed in or near Costco

17   locations, thereby making eye exams available onsite;

18        82.2.   The optometrists, as tenants of Defendants, were subject

19   to the direct or indirect control and influence of Costco, a registered

20   dispensing optician, by and through its de facto agent, MBNR, regarding

21   material aspects of the tenant–optometrists' day-to-day practices, including,

22   at a minimum, their hours of operation, the fees they charge, services they

23   advertise, therapies they offer, the length of their exams, the scope of the

24   exams, and the equipment they use to conduct the exams;

25        82.3.   Customers were lured into Costco locations to undergo

26   eye exams through the use of illegal and misleading advertisements

27   regarding the availability of on-site examinations from "Independent

28   Doctors of Optometry."

- 28 -

83. Plaintiff and members of the putative class would not have purchased an eye exam from a Costco optometrist but for:

83.1. Defendants' unlawful act of making the examinations available onsite and advertising their availability;

83.2. Defendants' nondisclosure of the fact that the optometrists performing the exams were subject to Defendants oversight and control regarding material aspects of the tenant–optometrists' day-to-day practices, including, at a minimum, their hours of operation, the fees they charge, services they advertise, therapies they offer, the length of their exams, the scope of the exams, and the equipment they use to conduct the exams, and were thus not "Independent";

83.3. Defendants' misrepresentation of the fact that the optometrist performing the exams were "Independent" when, in fact, the optometrist performing the exams were subject to Defendants' direct or indirect control and influence regarding material aspects of the tenant–optometrists' day-to-day practices, including, at a minimum, their hours of operation, the fees they charge, services they advertise, therapies they offer, the length of their exams, the scope of the exams, and the equipment they use to conduct the exams;

83.4. Defendants' nondisclosure of the fact that the onsite exams it offered were illegal and/or implied misrepresentation that the exams were legal.

84. Plaintiff and members of the putative class have lost money as a direct and proximate result of Defendants' aforementioned violations of California law in the form of fees for examinations which Defendants were not legally allowed to sell and which Plaintiff and the putative class members would not have purchased had they known about the truth about the exams.

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

- 29 -

85.   To the extent they did not themselves engage in unlawful conduct directly, Defendants—and each of them—aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein. In taking actions to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, Defendants acted with an awareness of the primary wrongdoing and realized the conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## SECOND CAUSE OF ACTION
### Violation of California's Unfair Competition Law (Bus. & Prof. Code, § 17200) for "Fraudulent" Business Practices
(Against All Defendants)

86.   Plaintiff incorporates herein each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

87.   Defendants engaged in, or aided and abetted in the commission of, "fraudulent" business practices by deceiving members of the public, including Plaintiff and members of the putative class by:

87.1.   Misrepresenting that the doctors of optometry practicing out of Costco locations were "Independent Doctors of Optometry," when in fact they were subject to Defendants' control and influence regarding material aspects of the tenant–optometrists' day-to-day practices, including, at a minimum, their hours of operation, the fees they charge, services they advertise, therapies they offer, the length of their exams, the scope of the exams, and the equipment they use to conduct the exams;

87.2.   Failing to disclose that the doctors performing the exams were subject to Defendants' control and influence regarding material aspects of the tenant–optometrists' day-to-day practices, including, at a

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

- 30 -

1   minimum, their hours of operation, the fees they charge, services they

2   advertise, therapies they offer, the length of their exams, the scope of the

3   exams, and the equipment they use to conduct the exams.

4           87.3.   Failing to disclose the material fact that the exams

5   available at Costco locations were not being offered in conformity with the

6   laws of the State of California;

7         88.   Each of these representations was false or misleading and made

8   with knowledge that it was false or misleading. Indeed, as matter of policy,

9   Costco and MBNR exerted their influence and control over their tenant–

10  optometrists and, as alleged above, coerced their tenant–optometrists to

11  undertake efforts that are in Defendants' business interests, and are

12  inconsistent with the aforementioned representations.

13        89.   Cognizant that the average consumer would be dissuaded by

14  indications that the exams would be performed by optometrists beholden to

15  Defendants, Defendants  intended for Plaintiff and members of the class to

16  rely on these representations in an effort to lure them to Costco stores for

17  eye examinations, and therefore used language in Costco's signs, website,

18  and advertisements—namely, the unqualified representation that the exams

19  would be performed by an "Independent Doctor of Optometry"—to appeal

20  to consumers' preference for unbiased, independent healthcare providers

21  whose professional services will be rendered without conflicts of interest.

22        90.   Defendants' conduct was likely to, and did deceive, the people

23  of the State of California and the general public regarding, among other

24  things, the independence of the optometrists performing eye exams at

25  Costco locations as well as the legality of the exam they purchased.

26        91.   The misrepresentations and omissions concerned material

27  information, namely the independence of the healthcare provider providing

28  their medical examination and the exam's conformity with the laws and

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

- 31 -

regulations governing the practice of optometry in California. The materiality of these facts is apparent both from Defendants' emphasis on those facts in advertising to members of the public, as well as the fact that Plaintiff and members of the class known the truth about these facts, they would not have purchased the exams.

92.     The nondisclosed facts—that the doctors performing the exams were *not* independence and the fact that the exams were not being offered in conformity with California law—are actionable insofar as the facts were exclusively known to Defendants and/or needed to be related to Plaintiff and members of the class to cure the misleading nature of the information Defendants' *did* convey. Moreover, insofar as Defendants attempted to engage in the unlicensed practice of optometry by controlling material aspects of their tenant–optometrists' practices, they are saddled with, and are estopped from denying the existence of, a fiduciary obligation to volunteer material information to prospective patients including Plaintiffs and members of the class.

93.     Plaintiff and members of the class reasonably relied on these representations in choosing to come to Costco locations to have their eyes examined and prescriptions written by optometrists in those stores.

94.     Plaintiff and members of the putative class have lost money as a direct and proximate result of Defendants' aforementioned violations of California law in the form of fees for examinations which Defendants were not legally allowed to sell and which Plaintiff and the putative class members would not have purchased had they known about the truth about the exams.

95.     To the extent they did not themselves engage in unlawful conduct directly, Defendants—and each of them—aided and abetted, encouraged and rendered substantial assistance in accomplishing the

THORSNES BARTOLOTTA McGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

- 32 -

1    wrongful conduct and their wrongful goals and other wrongdoing

2    complained of herein. In taking actions to aid and abet and substantially

3    assist the commission of these wrongful acts and other wrongdoings

4    complained of, Defendants acted with an awareness of the primary

5    wrongdoing and realized the conduct would substantially assist the

6    accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

7

8    **THIRD CAUSE OF ACTION**
**Violation of California's Unfair Competition Law (Bus. & Prof. Code, § 17200) for "Unfair" Business Practices**

9    (Against All Defendants)

10       96.    Plaintiff incorporates herein each and every allegation set forth

11   in the preceding paragraphs as though fully set forth herein.

12       97.    As alleged above, California law maintains a strong public

13   policy against the corporate practice of medicine, and has enacted

14   numerous laws and regulations in an effort to ban the myriad and ever-

15   evolving ways eyewear retailers will attempt to assert influence and control

16   over healthcare providers in an effort to enhance their marketing efforts.

17       98.    As alleged herein, Defendants formed and executed a plan to

18   violate California law by locating optometrists in Costco stores for the

19   purpose of offering onsite examinations, devising insidious ways to erode

20   the tenant–optometrists' independence by asserting control and influence

21   over material aspects of their practice, by misrepresenting that the exams

22   would be performed by "Independent Doctors of Optometry" when in fact

23   the optometrists providers were tenants subject to Defendants' control and

24   influence, by misrepresenting the legality of the practice to the general

25   public, and/or by aiding and abetting in the commission of the above.

26       99.    As noted above, MBNR, for sake of Costco's eyewear sales,

27   would frequently deter tenant–optometrists from offering therapeutic

28   services to their patients where those service might have the ultimate effect

THORSNES BARTOLOTTA McGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

- 33 -

1    of diminishing the patients' reliance on corrective lenses.

2        100.   That Defendants would conspire to violate California's long-

3    standing policy against the corporate practice of medicine and knowingly

4    deceive unsuspecting consumers into undergoing medical examinations by

5    doctors with a manifest conflict of interest who are subject to Defendants'

6    interests in maximizing profits, is outrageous, highly offensive to

7    established public policy as expressed in legislative enactments, and would

8    be condemned as despicable and immoral by the public at large.

9        101.   Defendants' conduct cannot be justified by any conceivable

10   legitimate purpose other than a reckless and greedy thirst for profit.

11   Defendants might try to justify their business practices as beneficial to the

12   consumer due to the convenience of one-stop optical shopping. And,

13   indeed, this perception of convenience—and the public's lack of awareness

14   regarding the influence over the "Independent Doctors of Optometry"

15   prescribing their eyewear by the company selling it—is undoubtedly the

16   reason why this practice remains highly profitable.

17       102.   This is not to mention that California's laws and regulations

18   banning the corporate oversight of medicine in general and optometry in

19   particular reflect the Legislature's recognition that convenience is not a

20   sufficient trade-off for the physical welfare of California citizens. It also

21   reflects the Legislature's recognition that, because consumers are all too

22   easily tempted by convenience and unaware of the hazards inherent in one-

23   stop shopping, the free market is not a sufficient mechanism to curb the

24   corporate practice of medicine.

25       103.   Accordingly, Defendants have engaged in "unfair" business

26   practices in violation of Business and Professions Code § 17200.

27       104.   Plaintiff and members of the putative class have lost money as a

28   direct and proximate result of Defendants' aforementioned violations of

THORSNES BARTOLOTTA McGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

California law in the form of fees for examinations which Defendants were not legally allowed to sell and which Plaintiff and the putative class members would not have purchased had they known about the truth about the exams.

105. To the extent they did not themselves engage in unlawful conduct directly, Defendants—and each of them—aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein. In taking actions to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, Defendants acted with an awareness of the primary wrongdoing and realized the conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

**FOURTH CAUSE OF ACTION**
**Violation of California's False Advertising Law**
**(Bus. & Prof. Code, § 17500)**
(Against All Defendants)

106. Defendants disseminated, or aided and abetted in the dissemination of, "fraudulent" advertising by making material false, deceptive, or misleading statements to members of the public, including Plaintiff and members of the putative class, including:

106.1. Misrepresenting that the doctors of optometry practicing out of Costco locations were "Independent Doctors of Optometry," when in fact they were subject to Defendants' control and influence regarding material aspects of the tenant–optometrists' day-to-day practices, including, at a minimum, their hours of operation, the fees they charge, services they advertise, therapies they offer, the length of their exams, the scope of the exams, and the equipment they use to conduct the exams;

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

106.2. Issuing misleading advertising insofar as it failed to disclose that the doctors performing the exams were subject to Defendants' control and influence regarding material aspects of the tenant–optometrists' day-to-day practices, including, at a minimum, their hours of operation, the fees they charge, services they advertise, therapies they offer, the length of their exams, the scope of the exams, and the equipment they use to conduct the exams.

106.3. Issuing misleading advertising insofar as it failed to disclose the material fact that the exams available at Costco locations were not being offered in conformity with the laws of the State of California;

107. Each of these representations was false or misleading and made with knowledge that it was false or misleading. Indeed, as matter of policy, Costco and MBNR exerted their influence and control over their tenant–optometrists and, as alleged above, coerced their tenant–optometrists to undertake efforts that are in Defendants' business interests, and are inconsistent with the aforementioned representations.

108. Cognizant that the average consumer would be dissuaded by indications that the exams would be performed by optometrists beholden to Defendants, Defendants intended for Plaintiff and members of the class to rely on these representations in an effort to lure them to Costco stores for eye examinations, and therefore used language in Costco's signs, website, and advertisements—namely, the unqualified representation that the exams would be performed by an "Independent Doctor of Optometry"—to appeal to consumers' preference for unbiased, independent healthcare providers whose professional services will be rendered without conflicts of interest.

109. Defendants' conduct was likely to, and did deceive, the people of the State of California and the general public regarding, among other things, the independence of the optometrists performing eye exams at

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

1   Costco locations as well as the legality of the exam they purchased.

2       110.   The misrepresentations and omissions concerned material
3   information, namely the independence of the healthcare provider providing
4   their medical examination and the exam's conformity with the laws and
5   regulations governing the practice of optometry in California. The
6   materiality of these facts is apparent both from Defendants' emphasis on
7   those facts in advertising to members of the public, as well as the fact that
8   Plaintiff and members of the class known the truth about these facts, they
9   would not have purchased the exams.

10      111.   The nondisclosed facts—that the doctors performing the exams
11  were *not* independence and the fact that the exams were not being offered
12  in conformity with California law—are actionable insofar as the facts were
13  exclusively known to Defendants and/or needed to be related to Plaintiff
14  and members of the class to cure the misleading nature of the information
15  Defendants' *did* convey. Moreover, insofar as Defendants attempted to
16  engage in the unlicensed practice of optometry by controlling material
17  aspects of their tenant–optometrists' practices, they are saddled with, and
18  are estopped from denying the existence of, a fiduciary obligation to
19  volunteer material information to prospective patients including Plaintiffs
20  and members of the class.

21      112.   Plaintiff and members of the class reasonably relied on these
22  representations in choosing to come to Costco locations to have their eyes
23  examined and prescriptions written by optometrists in those stores.

24      113.   Plaintiff and members of the putative class have lost money as a
25  direct and proximate result of Defendants' aforementioned violations of
26  California law in the form of fees for examinations which Defendants were
27  not legally allowed to sell and which Plaintiff and the putative class
28  members would not have purchased had they known about the truth about

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

1  the exams.

2      114.  To the extent they did not themselves engage in unlawful

3  conduct directly, Defendants—and each of them—aided and abetted,

4  encouraged and rendered substantial assistance in accomplishing the

5  wrongful conduct and their wrongful goals and other wrongdoing

6  complained of herein. In taking actions to aid and abet and substantially

7  assist the commission of these wrongful acts and other wrongdoings

8  complained of, Defendants acted with an awareness of the primary

9  wrongdoing and realized the conduct would substantially assist the

10  accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

11

**FIFTH CAUSE OF ACTION**
**Violation of California's Consumer Legal Remedies Act**
**(Civ. Code, § 1750, et. seq.)**
(Against All Defendants)

12

13

14      115.  Plaintiff incorporates herein each and every allegation set forth

15  in the preceding paragraphs as though fully set forth herein.

16      116.   Consumer Legal Remedies Act ("CLRA"), codified at California

17  Civil Code § 1750, et seq., was designed to protect consumers from unfair

18  and deceptive business practices. To that end, the CLRA sets forth a list of

19  unfair and deceptive business acts and practices that are specifically

20  prohibited in any transaction intended to result in the sale or lease of goods

21  or services to a consumer.

22      117.  Defendants are "persons" within the meaning of Civil Code

23  § 1770 and § 1761(c). Furthermore, Defendants sell "goods" and "services"

24  within the meaning of Civil Code § 1770 and § 1761(a)–(b).

25      118.  Plaintiff and members of the class were, at all relevant times,

26  "consumers" within the meaning of Civil Code § 1761(d).

27      119.   The purchase of eye examinations from Defendants constitutes a

28  transaction within the meaning of Civil Code § 1770 and § 1761(e).

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

1   120.   Defendants violated the CLRA in the following ways:

2   120.1. By "[p]assing off the goods or services as those of

3   another," in violation of Civil Code § 1770(a)(1), when they represented to

4   consumers that the eye exams available in Costco locations would be

5   provided exclusively by "Independent Doctors of Optometry" when in fact

6   they were provided by optometrists who were subject to Defendants'

7   control and influence regarding material aspects of the tenant–optometrists'

8   day-to-day practices, including, at a minimum, their hours of operation, the

9   fees they charge, services they advertise, therapies they offer, the length of

10  their exams, the scope of the exams, and the equipment they use to conduct

11  the exams.

12   120.2. By "[r]epresenting that . . . services are of a particular

13  standard . . . if they are of another," in violation of Civil Code § 1770(a)(7),

14  by representing to consumers that the eye exams would be provided

15  exclusively by "Independent Doctors of Optometry" when in fact they were

16  provided by optometrists who were subject to Defendants' control and

17  influence regarding material aspects of the tenant–optometrists' day-to-day

18  practices, including, at a minimum, their hours of operation, the fees they

19  charge, services they advertise, therapies they offer, the length of their

20  exams, the scope of the exams, and the equipment they use to conduct the

21  exams.

22   120.3. By "[a]dvertising . . . services with an intent not to sell

23  them as advertised," in violation of Civil Code § 1770(a)(9), by representing

24  to consumers that the eye exams would be provided exclusively by

25  "Independent Doctors of Optometry" when in fact they were provided by

26  optometrists who were subject to Defendants' control and influence

27  regarding material aspects of the tenant–optometrists' day-to-day practices,

28  including, at a minimum, their hours of operation, the fees they charge,

THORSNES BARTOLOTTA McGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

- 39 -

services they advertise, therapies they offer, the length of their exams, the scope of the exams, and the equipment they use to conduct the exams.

121. Plaintiff and members of the class were and are direct victims of Defendants' "false" advertising in violation of Civil Code § 1770 as described above, by virtue of having paid for what they believed would be a legal exam from an "Independent Doctor of Optometry," when neither was true.

122. Plaintiff and members of the putative class have lost money as a direct and proximate result of Defendants' aforementioned violations of California law in the form of fees for examinations which Defendants were not legally allowed to sell and which Plaintiff and the putative class members would not have purchased had they known the truth about the persons conducting the exams.

123. To the extent they did not themselves engage in unlawful conduct directly, Defendants—and each of them—aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein. In taking actions to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, Defendants acted with an awareness of the primary wrongdoing and realized the conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

124. On September 26, 2013, and in the manner set forth in Civil Code § 1782(a)(2), Plaintiff notified Defendants of the aforementioned violations of the CLRA and demanded they take appropriate corrective measures to ameliorate the violations. As of the filing of this complaint, Defendants have failed to take any corrective measures. Accordingly, pursuant to Civil Code § 1780(1), Plaintiff and the class seek the following

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

- 40 -

1  remedies:

2     124.1. An order of this Court enjoining Defendants from

3  engaging in the methods, acts, and/or practices alleged herein, as provided

4  under Civil Code section 1780(a)(2);

5     124.2. Actual damages, as provided under Civil Code

6  § 1780(a)(1);

7     124.3. Restitution of property, as provided under Civil Code

8  § 1780(a)(3);

9     124.4. Statutory damages under Civil Code § 1780, where

10  applicable; and

11     124.5. Punitive damages, as provided under Civil Code

12  § 1780(a)(4).

13

14  ### PRAYER FOR RELIEF

15   Wherefore, Plaintiff prays that this action be certified as a class, that

16  Plaintiff be designated as the class representative, that his counsel be

17  designated as class counsel, and that judgment be entered against

18  Defendants, and each of them, jointly and severally, as follows:

19   1. For compensatory damages, including actual damages,

20  according to proof, where applicable;

21   2. For restitution in an amount to be determined and proven at

22  time of trial;

23   3. For disgorgement of any and all monies Defendants received as

24  a result of the misconduct complained of herein in an amount to be

25  determined and proven at time of trial;

26   4. For statutory penalties, where applicable;

27   5. For punitive damages, where applicable;

28   6. For attorneys' fees incurred in the investigation and prosecution

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

1   of this suit, where applicable;

2        7.    For the costs of litigation and investigation associated with this

3   suit;

4        8.    For pre-judgment interest at the maximum legal rate on all sums

5   awarded;

6        9.    For appointment of a receiver; and

7        10.   For such other relief as the Court deems just and proper.

8                      REQUEST FOR JURY TRIAL

9        Plaintiff requests a jury trial on all causes of actions for which the

10  right to a jury exists under applicable state or federal law.

11

12  Dated: October 30, 2015          THORSNES BARTOLOTTA MCGUIRE LLP

13

14                        By:    s/ Benjamin I. Siminou

15                               _____
                                 Benjamin I. Siminou
                                 siminou@tbmlawyers.com

16                               Attorneys for Plaintiff JASON DECARLO

17

18

19

20

21

22

23

24

25

26

27

28

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

1

**Index of Exhibits**

2

| Exhibit | Document | Page Number |
|---------|----------|-------------|
| A | Assembly Bill No. 684. Introduced by Assembly Member Bonilla, February 25, 2015 | Exh A044-A047 |
| B | Assembly Bill No. 684, Chapter 405 | Exh B048-B062 |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
TEL: (619) 236-9363
FAX: (619) 236-9653

1143001v1

- 43 -

**CERTIFICATE OF SERVICE**

I am employed in the County of San Diego, State of California. I am over the age of eighteen (18) and am not a party to the within action; my business address is 2550 Fifth Avenue, 11th Floor, San Diego, California 92103.

On October 30, 2015, I served the following document(s):

**Second Amended Class-Action Complaint**

on all interested parties in this action by placing ☐ the original ☒ a true copy thereof enclosed in a sealed envelope addressed to:

| | |
|---|---|
| Rebekah Kaufman, Esq.<br>Lauren Wroblewski, Esq.<br>Morrison & Foerster LLP<br>425 Market Street<br>San Francisco. CA 94105 | Tel: 415/268-7000<br>Fax: 415/268-7522<br><br>Email: rkaufman@mofo.com<br>Email: lwroblewski@mofo.com |
| Martin D. Bern<br>Munger, Tolles & Olson LLP<br>560 Mission Street<br>Twenty-Seventh Floor<br>San Francisco. CA 94105-2907 | Tel: 415/512-4000<br>Fax: 415/512-4077<br><br>Email: martin.bern@mto.com |
| Maximillian Louis Feldman<br>Keith Rhoderic Hamilton, II<br>Munger, Tolles & Olson LLP<br>355 South Grand Avenue, 35th Floor<br>Los Angeles, CA 90071-1560 | Tel: 213/683-9100<br>Fax: 213/687-3702<br><br>Email:<br>Maximillian.feldman@mto.com<br>Email: keith.hamilton@mto.com |

☐ **BY MAIL**: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U. S. Postal Service on the same day with postage thereon fully prepaid at San Diego, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit..

☐ **BY PERSONAL SERVICE**: I served the documents on the persons [ below or listed on an attachment hereto], as follows:.

☐ **BY FAX**: By use of facsimile machine telephone number (619) 233-6039, I served a copy of the above-listed document(s) to the offices of the addressee on January 24, 2014 by transmitting by facsimile machine. The facsimile machine I used complied with California Rules of Court Rule 2.302, and no error was reported by the machine. Pursuant to California Rules of Court Rule 2.304(d), I caused the machine to print a transmission record of the transmission.

THORSNES BARTOLOTTA McGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

1    ☐    **BY OVERNIGHT COURIER:** By depositing copies of the above document(s) in a box or other facility regularly maintained by Fed-Ex in an envelope or package designed by Fed-Ex with delivery fees paid or provided for and sent to the person(s) named on the attached service list [C.C.P. § 1013, 2015.5].

2

3

4    ☐    **BY ELECTRONIC:** I caused a true and correct copy thereof to be electronically filed using the Court's Electronic Court Filing ("ECF") system and service was completed by electronic means by transmittal of a Notice of Electronic Filing on the registered participants of the ECF System.

5

6

7    ☒    **BY CM/ECF SERVICE:** Pursuant to controlling General Order(s) and Local Court Rule(s) the foregoing document will be served by the court via NEF and hyperlink to the document. On October 30, 2015, I checked the CM/ECF docket for this case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addresses indicated below.

8

9

10

11   ☒    [Federal]   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

12

13        Executed on October 30, 2015, at San Diego, California.

14

15                                              Diane DeCarlo

16

17

18

19

20

21

22

23

24

25

26

27

28

THORSNES BARTOLOTTA MCGUIRE
2550 FIFTH AVENUE, 11TH FLOOR
SAN DIEGO, CALIFORNIA 92103
(619) 236-9363
FAX (619) 236-9653

Certificate of Service                                    Case No: 14cv0202-JAH(BLM)